NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE A. VANDERHOOF,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No.: 18-14783 (CCC)<br><br>OPINION |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

Before the Court is the appeal of Plaintiff George A. Vanderhoof seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying in part his application for a period of disability and disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "SSA"). For the reasons set forth below, the Court will affirm the Commissioner's decision.

**II.    BACKGROUND**

**A.     Factual Background**

Plaintiff, an adult male, was born on September 11, 1960. (Tr.[1] at 63). Plaintiff possesses an eighth-grade education. (*Id.* at 38). From the age of fourteen, Plaintiff worked in landscape construction in Newark, New Jersey. (*Id.* at 40). Plaintiff's duties included physical work such as erecting fencing, digging holes, mixing cement, and similar tasks. (*Id.* at 39-40). Throughout his tenure as a laborer, Plaintiff performed substantially the same work. (*Id.* at 40). Plaintiff

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 8).

1

alleges that, following an ankle surgery, he became unable to perform his job because of ankle pain and swelling initially caused by an infection. (*Id.* at 41). After the Commissioner denied his initial application in 2014, Plaintiff tried to return to work but was fired after approximately one month. (*Id.* at 39). On his disability report, Plaintiff wrote that his bypass surgery in 2002, multiple joint arthritis, and hypertensive cardiovascular disease/hypertension limited his ability to work. (*Id.* at 176).

Plaintiff stated at an administrative hearing that he was unable to perform landscaping work because of his impairments. (*Id.* at 40). Further, Plaintiff stated he had difficulty standing for long periods of time because of tightness in his legs and arthritis in his ankles. (*Id.*). Plaintiff reports he takes four Percocet per day to cope with his ankle pain. (*Id.* at 42).

### B.   Procedural Background

On June 9, 2014, Plaintiff applied for a period of disability and DIB. (Tr. at 17). Plaintiff's application was denied initially on September 17, 2014, and on reconsideration on March 15, 2015. (*Id.*). On March 10, 2017, a hearing was held before an Administrative Law Judge ("ALJ"). (*Id.* at 26). On June 29, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the SSA prior to September 11, 2015. (*Id.*). However, the ALJ awarded disability benefits starting September 11, 2015. (*Id.*). Plaintiff requested review of the decision and the Appeals Council denied the request on August 13, 2018. (*Id.* at 1). On October 9, 2018, Plaintiff instituted this action.

### C.  Relevant Medical Opinion Evidence

For clarity's sake, the Court will briefly recount some of the medical opinion evidence relevant to this opinion.

#### 1.  Dr. Rappaport's Opinion

On January 18, 2017, Liviu Rappaport, M.D., Plaintiff's treating pulmonologist, completed a medical source statement on Plaintiff's behalf in which he offered an opinion on Plaintiff's capacities. (*Id.* at 397-401). In his statement, Dr. Rappaport indicated that Plaintiff suffered from pain in both legs and ankles, fatigue, and shortness of breath caused by, among other things, coronary artery disease, neuropathy, arthritis in both ankles, and ischemic heart disease. (*Id.* at 397-98). Dr. Rappaport opined that he expected Plaintiff's impairments to last for at least twelve months. (*Id.*). Further, Dr. Rappaport opined that, in an eight-hour work day, Plaintiff could perform a job in a seated position for one hour and could perform a job in a standing or walking position for less than one hour. (*Id.* at 399). Additionally, Dr. Rappaport indicated that it would be necessary for Plaintiff to elevate both legs while seated because his legs would swell if not elevated for more than one hour. (*Id.*). Dr. Rappaport also expressed his opinion that Plaintiff's symptoms would increase if he was placed in a competitive work environment and that Plaintiff's condition would require him to take unscheduled breaks, with the consequence that he would be unable to work at all. (*Id.* at 400). Finally, Dr. Rappaport indicated that, in his opinion, the findings and limitations expressed in his medical source statement would have applied to Plaintiff beginning on May 1, 2013. (*Id.* at 401).

2. **Dr. Goldbas's Opinion**

On September 17, 2014, state agency medical consultant Howard Goldbas, M.D. completed an assessment of Plaintiff's residual functional capacity ("RFC") as part of the initial review of Plaintiff's disability application. (*Id.* at 63-71). Dr. Goldbas acknowledged Plaintiff's history of ischemic heart disease, neuropathy, and ailments of the ankle. (*Id.* at 69). In his assessment, Dr. Goldbas opined that, notwithstanding Plaintiff's condition and his exertional limitations, he could stand, sit, or walk for up to six hours of an eight-hour work day. (*Id.* at 68).

### 3. Dr. Wells's Opinion

Upon reconsideration of Plaintiff's application in March 2015, state agency medical consultant W. Wells assessed Plaintiff's RFC. (*Id.* at 76-82). Dr. Wells affirmed Dr. Goldbas's RFC assessment. (*Id.* at 79). Notably, Dr. Wells agreed with Dr. Goldbas's finding that Plaintiff could sit, stand, and walk for up to six hours in an eight-hour work day. (*Id.* at 78). Thus, the medical opinions offered by Drs. Goldbas and Wells appear to contradict Dr. Rappaport's opinion.

## II.     LEGAL STANDARD

### A.     Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 09-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have

come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 224 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

**B.  Determining Disability**

Pursuant to the SSA, in order to be eligible for benefits, a Plaintiff must show that he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Taking into account the Plaintiff's age, education, and work experience, disability will be evaluated by the Plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

**C.  Sequential Evaluation Process**

The SSA follows a five-step, sequential evaluation to determine whether a Plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the Plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. *Id.* Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much RFC the applicant retains in spite of his impairment. *Id.* at 253. Fourth, the ALJ must consider whether the Plaintiff's RFC is sufficient to perform his past relevant work. *Id.* Fifth, if his RFC is not sufficient, the ALJ must determine whether there is other work in the national economy that the Plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point that the Plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The Plaintiff bears the burden of proof at steps one, two, and four, with the burden shifting to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

IV.  **DISCUSSION**

   A.  **Summary of the ALJ's Findings**

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA through December 31, 2016 and had not engaged in substantial gainful activity since his alleged onset date, May 13, 2013. (Tr. at 19). At steps two and three, the ALJ found that Plaintiff's impairments were "severe," but did not meet, either individually or in combination, the requirements of any of the Listed impairments. (*Id.* at 19-20). The ALJ determined that Plaintiff suffered from status post quadruple bypass graft surgery, carotid artery stenosis, hypertension,

diabetes, peripheral neuropathy, arthritis, status post open reduction and internal fixation of the right ankle in 1994, and obesity. (*Id.* at 19).

The ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 CFR 404.1567(b) with additional limitations of his ability to climb, crawl, and engage in activities requiring exposure to extreme heat and cold. (*Id.*). The ALJ considered all symptoms and their consistency with the evidence. Specifically, the ALJ considered the medical evidence which demonstrated that Plaintiff had a "normal gait, normal tone, strength, and range of motion and no effusions, instability, or tenderness to palpation." (*Id.* at 21). The ALJ noted that Plaintiff "engaged in a somewhat normal level of daily activity and interaction," and that those activities "replicate[d] those necessary for obtaining and maintaining employment." (*Id.* at 23).

At step four, the ALJ found that Plaintiff was unable to perform his past work as a landscape laborer. (*Id.* at 24). At step five, the ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, Plaintiff had, prior to September 11, 2015, the ability to work in jobs that existed in significant numbers in the national economy. (*Id.*). The ALJ relied on the testimony of a vocational expert, who testified that Plaintiff could work as a mail clerk, cafeteria attendant, or cleaner. (*Id.* at 25). However, the ALJ further found that as of September 11, 2015, on which date Plaintiff graduated into a different age category under the regulations, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*). Thus, the ALJ ultimately concluded that Plaintiff was not disabled prior to September 11, 2015, but became disabled on that date and remained disabled through the date of the decision. (*Id.* at 26).

B.   Analysis

Plaintiff, in support of his contention that the ALJ's decision should be vacated and the case remanded for further consideration of the evidence, suggests that the ALJ's opinion suffers from the following infirmities: (1) the ALJ improperly relied on the opinions of state agency consultants over those of Plaintiff's treating physician, Dr. Rappaport, (2) the ALJ's RFC determination did not include a function-by-function assessment of Plaintiff's capacities, and (3) the RFC determination was tainted because the ALJ improperly evaluated Plaintiff's subjective complaints about his symptoms. The Court will consider each argument in turn.

### 1. The ALJ's Treatment of the Medical Opinion Evidence

Plaintiff makes a number of arguments related to the ALJ's decision not to provide controlling weight to Dr. Rappaport's opinion. Plaintiff first argues that the ALJ's decision not to accept Dr. Rappaport's opinion was impermissibly based on speculation or the ALJ's own lay medical opinion. (ECF No. 12 ("Pl.'s Br.") at 10, 12). Further, Plaintiff argues the ALJ ignored evidence that supported Dr. Rappaport's opinion. (*Id.* at 12-13). Finally, Plaintiff argues Dr. Rappaport's opinion should have controlled because the state examiners' opinions were based on an incomplete record. (*Id.* at 14-16).

When reviewing an ALJ's decision to reject the opinion of a treating physician, courts in the Third Circuit rely on a set of well-defined principals. To begin with, "an ALJ is not free to employ [his] own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). Where, as here, the record contains conflicting medical evidence, "the ALJ may choose whom to credit, but 'cannot reject evidence for no reason or for the wrong reason.'" *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). "The ALJ must consider all the evidence and give some reason for discounting the evidence []he rejects." *Id.* (citing *Stewart*

*v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)). Further, the opinions of treating physicians in particular are to be "accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Id.* (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

The ALJ acknowledged Dr. Rappaport's opinion but declined to afford it controlling weight. (Tr. at 23). The ALJ also noted opinions rendered by other physicians which contradicted Dr. Rappaport's findings and provided a sensible reason for preferring such opinions: that Dr. Rappaport's opinions were inconsistent with the available objective medical evidence.[2] (*Id.*). The ALJ's reasoning appears to be corroborated by the record. For example, a September 3, 2014 examination revealed only "mild restriction" of Plaintiff's right ankle, as well as no visible swelling. (*Id.* at 265). Further, the ALJ noted that the Plaintiff had "routinely denied symptoms

---

[2]Plaintiff argues that it was inappropriate for the ALJ to use this sort of reasoning because doing so required him to interpret the medical evidence. (Pl.'s Br. at 12). It is clear that "[i]n choosing to reject [a] treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Serbouti v. Comm'r of Soc. Sec.*, No. 11-4217, 2012 WL 3229157, at *7 (D.N.J. Aug. 6, 2012) (quoting *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000)). Here, however, the record indicates that the ALJ's decision to afford less than controlling weight to Dr. Rappaport's opinion *was* based on contrary medical evidence. Under such circumstances an ALJ is free to evaluate a physician's opinion for consistency with the other medical evidence of record. *See* 20 C.F.R. § 404.1527(c)(4) (stating that the Commissioner will consider the extent to which a medical opinion is consistent with the record as a whole when weighing medical opinions); *Serbouti*, 2012 WL 3229157 at *7 (in the process of weighing the medical opinion evidence, the ALJ did not err by interpreting medical evidence of record where the ALJ determined that such evidence contradicted a treating physician's opinion).

9

associated with his alleged impairments." (*Id.* at 23). For instance, treatment notes from Dr. Rappaport indicate that Plaintiff repeatedly denied suffering joint swelling. (*Id.* at 288, 347). Additionally, the ALJ extensively discussed Plaintiff's long history of unremarkable clinical findings relevant to his complaints. (*Id.* at 21-22). Thus, the Court finds that the ALJ's decision not to grant controlling weight to Dr. Rappaport's opinion was supported by substantial evidence.[3]

Next, Plaintiff accuses the ALJ of having "cherry-picked" evidence from the record that supported his conclusions while disregarding evidence that supported Dr. Rappaport's opinion. (Pl.'s Br. at 12-14). Plaintiff argues that the ALJ failed to discuss Dr. Rappaport's August 9, 2013 findings indicating that Plaintiff exhibited moderately decreased active range of motion, strength, and tender points. (*Id.* at 13). Plaintiff also points to other treatment notes by Dr. Rappaport dated July 1, 2016 and later, (*id.*), and other record evidence revealing abnormal findings. (*Id.* at 14). The Court however, is persuaded that the ALJ's review of the record evidence was sufficiently extensive to support his weighing of Dr. Rappaport's opinion. First, the Court notes that the ALJ did consider Dr. Rappaport's August 9, 2013 findings, but noted that return visits on November 19 and December 17, 2013 revealed more mild findings. (*Id.* at 21-22). Second, where medical

---

[3]Plaintiff further argues that, even if Dr. Rappaport's opinion was not entitled to controlling weight, this matter should still be remanded for further consideration of Dr. Rappaport's opinion because the ALJ failed to consider the factors listed in 20 CFR 404.1527(c). These non-exhaustive factors, which are used to assign weight to non-controlling medical opinions, include (1) whether the source of the opinion examined the claimant, (2) the nature and duration of any treating relationship, (3) the extent to which the opinion was explained and supported by reference to treatment notes or other records, (4) the extent to which the opinion is consistent with the record as a whole, and (5) whether the opinion was about medical issues related to the source's area of specialty. However, the Court finds that remand is unwarranted because the ALJ considered all of the relevant factors. *See* (Tr. at 23) (stating that the ALJ considered "the nature and length of the treating relationship, areas of specialty, findings supporting the opinions, and similar factors" with regard to all medical opinions in the record, and noting that Dr. Rappaport was Plaintiff's treating physician); (*Id.* at 21-22) (extensively discussing Plaintiff's treatment by Dr. Rappaport including descriptions of relevant treatment notes); (*Id.* at 23) (evaluating the extent to which Dr. Rappaport's opinion was consistent with the record).

records are as voluminous as they are here an ALJ is not required to "make reference to every relevant treatment note" in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Rather, an ALJ must "give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Id.* at 43 (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)). The Court is satisfied that the ALJ met that burden here.

For example, Plaintiff complains that the ALJ failed to consider ultrasound findings indicating stenosis of Plaintiff's right carotid artery. (Pl.'s Br. at 14). However, the record indicates that the ALJ was aware of such findings and took them into consideration.[4] (Tr. at 22) (noting that "on August 14, 2014, the claimant underwent a carotid ultrasound that yielded unchanged findings from the prior study [which indicated stenosis of the right carotid artery] . . ."). Moreover, the ALJ's examination of the medical evidence was not limited to findings that supported his conclusion. For example, the ALJ noted that an October 4, 2012 examination revealed chronic arthritic changes of the ankle, and that on September 3, 2014 Plaintiff was observed to suffer from decreased dorsiflexion and flexion of the right ankle. (*Id.* at 21-22). As such, this is not a case like *Burnett*, in which the Court "cannot tell if significant probative evidence

---

[4]Plaintiff further complains that the ALJ failed to consider various medical records which significantly post-date September 11, 2015. Although the court acknowledges that evidence post-dating the relevant period may be material because it may reflect Plaintiff's condition during such period, "subsequent medical evidence or 'retrospective diagnos[es]' may be considered only if [they are] 'corroborated by . . . evidence relating back to the claimed period of disability.'" *Peresolak v. Astrue*, No. 12-921, 2013 WL 5302292, at *5 (W.D. Pa. Sept. 19, 2013) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003)). Evidence cited by Plaintiff which post-dates September 11, 2015, which the Court has reviewed, gives little or no indication of how it relates to Plaintiff's condition during the relevant period in this matter (that is, the period prior to September 11, 2015, during which the ALJ found that Plaintiff was not disabled). Under such circumstances, the Court finds such records are not material. *See Thornton v. Comm'r of Soc. Sec.*, No. 16-11717, 2017 WL 4969352, at *4 (E.D. Mich. May 17, 2017) (medical records generated eighteen months after the ALJ's decision were not material because they gave no indication of how their findings related to the plaintiff's condition during the relevant period), *R. & R. adopted*, No. 16-11717, 2017 WL 4296605 (E.D. Mich. Sept. 28, 2017).

was not credited or simply ignored." 220 F.3d at 121. Rather, the ALJ arrived at his RFC determination based on his thorough consideration of the balance of the evidence, including those findings which, taken in isolation, might have suggested a more restrictive RFC or broader acceptance of Dr. Rappaport's opinion. The Court thus considers remand for the purpose of further recitation of the record evidence to be unnecessary.

Plaintiff further argues that Dr. Rappaport's opinion should have controlled because the state agency consultants based their opinions on an incomplete record. (Pl.'s Br. at 14-16). Plaintiff cites *Cadillac v. Barnhart*, in which the Third Circuit held that it was "error for the ALJ to have favored opinions based on an incomplete record over those based on the complete record, and to have done so because she injected her own medical opinion into the mix." 84 F. App'x 163, 169 (3d Cir. 2003). However, *Cadillac* is distinguishable. In that case, the ALJ credited opinions from state agency physicians rendered in February and April 1997 over a third opinion by a non-examining physician rendered in December 1997 despite that, during the intervening time, the claimant had experienced an episode of acute back pain resulting in a twelve-day hospitalization. *Id.* at 169. The Third Circuit held that it was error for the ALJ to discount the December 1997 opinion in favor of the earlier opinions given that the state agency physicians "never had the opportunity to consider the major medical events that occurred in 1997." *Id.*

> The crux of the error in *Cadillac* was the ALJ's decision to credit the opinions of the agency physicians who did not have the opportunity to consider the serious medical events that significantly distorted the medical picture painted by the records which existed at the time of the agency's review. Additionally, the ALJ's decision to discount the only opinion which considered the significant developments in plaintiff's medical condition was based on the ALJ's own speculation . . . .

*Langevin v. Colvin*, No. 13-1346, 2014 WL 2893017, at *1 (W.D. Pa. June 26, 2014). Here, the state agency consultants' opinions were rendered in September 2014 and March 2015, and the

12

record does not reveal the existence of "major medical events" unconsidered by Drs. Goldbas and Wells but likely to have substantially degraded Plaintiff's functional capacity prior to September 11, 2015. Moreover, unlike in *Cadillac*, the ALJ's decision to discount Dr. Rappaport's opinion was not based on his "injection" of his own medical opinion "into the mix," but rather upon a legitimate reason, that is, his finding that such opinion was inconsistent with the other medical evidence of record. (Tr. at 23). Thus, no remand for additional consideration of Dr. Rappaport's opinion is necessary. *See Langevin*, 2014 WL 2893017 at *1 (holding that *Cadillac* did not require remand where the ALJ's decision to favor a medical opinion which was based on an incomplete record was justified by legitimate reasons rather than merely the ALJ's own lay opinion).

    2.        The ALJ's RFC Assessment

Plaintiff argues that the ALJ opinion must be vacated because the ALJ expressed Plaintiff's RFC in terms of exertional limitations without first engaging in a function-by-function assessment of Plaintiff's ability to perform work activities as required by Social Security Ruling ("SSR") 96-8p. (Pl.'s Br. at 17-18). "In order to meet the requirements of 96-8p, the ALJ 'must specify the evidence that he relied upon to support his [or her] conclusion.'" *Sullivan v. Comm'r of Soc. Sec.*, No. 12-7668, 2013 WL 5973799, at *8 (D.N.J. Nov. 8, 2013) (quoting *Pearson v. Barnhart*, 380 F. Supp. 2d. 496, 506 (D.N.J. 2005)). However, "[the Third Circuit] does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record." *Tenorio v. Berryhill*, No. 16-3760, 2017 WL 4548057, at *4 (E.D. Pa. Oct. 11, 2017) (citing *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995, slip op. at 4 (3d Cir. Dec. 19, 2000)). Here, the ALJ engaged in a detailed narrative discussion of the record evidence supporting the RFC and identified the evidence that he relied upon in reaching his conclusion. (Tr. at 20-24). Further, the ALJ

adequately considered and explained factors that might weigh against his conclusion. He recognized Plaintiff has severe impairments and referenced the opinions of several physicians in explaining his finding that such impairments would not prevent Plaintiff from performing light work, with additional limitations. (*Id.* at 19-24). Thus, the requirements of SSR 96-8p were adequately satisfied and the Court concludes that the ALJ's RFC determination was based on substantial evidence.

3.  **The ALJ's Assessment of Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to adequately consider Plaintiff's subjective statements regarding his pain and functional limitations. (Pl.'s Brief at 18-22). Allegations of pain and subjective symptoms are not, on their own, sufficient to establish disability, and are to be considered in conjunction with the other evidence. 20 C.F.R. § 404.1529(a). An ALJ is charged with determining whether the claimant accurately states the extent of his pain. *See Id.* § 404.1529(c)(4). In making such determination, an ALJ must consider whether self-reported symptoms can "reasonably be accepted as consistent with the objective medical evidence." *Id.* § 404.1592(a). An ALJ need not credit a claimant's subjective statements about his pain where such statements are contradicted by objective medical evidence. *See Hartranft*, 181 F.3d at 362; *see also Ahearn v. Comm'r of Soc. Sec.*, 165 F. App'x 212, 216 (3d Cir. 2006) (affirming ALJ's finding that the claimant was not disabled where "substantial evidence supported both the ALJ's subjective pain credibility finding as well as the ALJ's finding that any additional subjective pain experienced by [claimant] did not prevent [claimant from working]").

The ALJ's opinion indicates that he engaged in careful consideration of Plaintiff's statements about his pain and limitations including his statement that he was "unable to walk far, climb stairs, or stand for extended periods without rest;" his statements about how his conditions

14

affected his ability to "squat, bend, and kneel;" his hearing testimony about his "inability to stand on his feet for an extended period;" and his testimony that he was "able to stand for an hour at a time," but with "swelling and pain in his ankles." (Tr. at 21). The ALJ also extensively considered the objective medical evidence, including treatment notes, objective findings, and medical opinion evidence related to Plaintiff's condition and impairments. (*Id.* at 21-24). Although the ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, (*id.* at 21), he nevertheless concluded, upon review of the other evidence, that the record did not support symptoms as severe or limitations as restrictive as alleged by Plaintiff. Specifically, the ALJ noted Plaintiff's history of unremarkable medical findings related to his complaints and inconsistent statements. (*Id.* at 21-24). The ALJ also made note of two state agency physicians who opined that Plaintiff could perform a range of light work. (*Id.* at 23). The Court thus concludes that the ALJ adequately considered Plaintiff's subjective complaints in reaching his RFC determination, and his decision was based on substantial evidence.

Plaintiff further argues the ALJ overstated the intensity of Plaintiff's daily activities. The ALJ wrote that Plaintiff could "prepare his own meals, perform household chores, get around outside every day and unaccompanied, handle his own finances, and regularly participate in social activities." (*Id.* at 23). Such findings appear to be consistent with Plaintiff's self-report of his daily activities. *See* (*id.* at 185-92). Plaintiff, however, complains that the ALJ failed to consider his testimony about his limitations in performing such tasks. (Pl.'s Br. at 21). For example, the ALJ noted that Plaintiff cooked meals and performed chores without noting his testimony that he must take breaks when performing such work due to pain. (*Id.* at 23). Remand is not necessary here because, as noted above, the ALJ fully considered both objective and subjective indications of Plaintiff's pain and limitations including Plaintiff's testimony about such limitations. *See Bianchi*

*v. Comm'r of Soc. Sec.*, No. 16-2036, 2017 WL 3872402, at *5 (D.N.J. Sept. 1, 2017) (affirming RFC assessment where the ALJ considered both the objective medical evidence and the plaintiff's testimony about her limitations); *see also Hund v. Berryhill*, No. 16-231, 2017 WL 2569990, at *11 (E.D. Pa. May 23, 2017) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)) (in reviewing an ALJ's RFC determination, the ALJ opinion is to be read "as a whole"), *R. & R. adopted sub nom. Hund v. Comm'r of Soc. Sec.*, No. 16-231, 2017 WL 2547238 (E.D. Pa. June 13, 2017).

Accordingly, the Court concludes that the ALJ's determination that Plaintiff was not disabled prior to September 11, 2015, but became disabled on that date, was supported by substantial evidence.

V.  **CONCLUSION**

For the foregoing reasons, the Court will affirm the Commissioner's decision. An appropriate Order accompanies this Opinion.

DATED: May 26, 2020

**CLAIRE C. CECCHI, U.S.D.J.**